Joseph F. Wijas and Anna Wijas, His Wife, Plaintiffs-Appellees, v. Hamilton Clorfene and Hilda Clorfene, His Wife, La Salle National Bank, a Banking Corporation as Trustee Under Trust No. 32395, Philip W. Regner, A-L Auto Driving School, Inc., a Corporation, Richard Bailey, and "Unknown Owners," Defendants-Appellants.

Gen. No. 53,911.

First District.

June 12, 1970.

Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel), for appellants.

Everett Lewy, of Chicago, for appellees.

STOUDER, J.

Plaintiffs-Appellees, Joseph Wijas and Anna Wijas, husband and wife, brought this action in the Circuit Court of Cook County to quiet title to two parcels of land. Plaintiffs claim title by virtue of Ill Rev Stats 1967, c 83, § 1 (20 years adverse possession). Defendants are successors in interest to Rudolph Toth now deceased. The court granted the prayer of the complaint and from such decree defendants have appealed.

On April 12, 1935, plaintiffs, Joseph and Anna Wijas, purchased the house and sixty foot lot for $9,500 from Rudolph Toth and his wife. The premises were legally described in the warranty deed delivered to plaintiffs. Such premises are described in the complaint as parcel A and there is no dispute concerning plaintiffs' ownership thereof.

At the time the Toths sold parcel A to the plaintiffs the Toths also owned the real estate contiguous to parcel A and constituting all of lot 1 south of parcel A between parcel A and Elston Avenue. Of the property owned by the Toths in 1935 lying south of parcel A, an immediately contiguous strip is described in the complaint by metes and bounds and referred to as parcel B and it is parcel B which is the area in dispute. Parcel B in general, extends from the south line of parcel A to a garage building located on the remainder of the Toths' property.

There is not now nor was there ever any monument, fence or anything else which delineated the south line of parcel A or the north line of parcel B. Prior to their sale of parcel A in 1935, the Toths had built a rock garden and fish pond which was located at least in part on parcel B. The Toths had also built a concrete walk which led

from the rear of the home across parcel B to Elston Avenue, which sidewalk remains in the same location. At the time of the sale there was a farm type wooden fence around three sides of parcel A and along two sides of parcel B, the filling station or garage building closing off the third side of parcel B.

Since plaintiffs' claim was based on 20 years adverse possession of parcel B, they presented evidence concerning their conduct with respect to parcel B subsequent to 1935, it being the claim of the plaintiffs that they took adverse possession of parcel B at the same time they purchased parcel A. The only evidence presented by defendants was the testimony of an attorney who had handled the sale transaction in 1935. He had no knowledge of the property thereafter.

The trial court in a memorandum opinion later incorporated into the decree, made numerous findings of fact relating to and in support of the necessary factors or conditions which must exist before title based on adverse possession for more than 20 years can be asserted.

In seeking to reverse the trial court's action the defendants argue principally that the evidence as a matter of law does not support the requirements necessary to establish title by adverse possession. In particular they argue that the evidence is insufficient to show one, that the possession of plaintiffs was hostile in its inception, two, that the plaintiffs were in adverse possession of parcel B or three, that plaintiffs' possession of parcel B was exclusive.

■■■■■ The general rules regarding title by adverse possession are well settled. The possession must be hostile in its inception and so continued without any interruption for a period of twenty years. It must be an actual visible and exclusive possession acquired and retained under claim of title inconsistent with that of the true owner. Turney v. Chamberlain, 15 Ill 271. As a corollary to the nature and character of the possession required it

has sometimes been said that the proof of possession must be strict, clear and unequivocal. Pullman Car v. Stroh, 349 Ill 492, 182 NE 399 and Zirngibl v. Calumet Dock Co., 157 Ill 430, 42 NE 431. As in other civil cases the adverse claimant has the burden of proof to prove his case by a preponderance of legally competent evidence. Grim v. Murphy, 110 Ill 271 and New York Central Railroad Co. v. Kinsella, 324 Ill 339, 155 NE 284.

Defendants insist that the evidence fails to support any conclusion that the possession of plaintiffs was hostile in its inception. In accord with allegations set forth in their complaint, the plaintiffs testified that at the time of the purchase of parcel A from the Toths in 1935, the Toths indicated that the improvements on and the area now designated as parcel B, would be the property of plaintiffs.

██ For possession to be hostile in its inception, no spirit of animosity or hostility is required nor need the adverse claimant be guilty of deliberate or wilful tortious conduct. The essence of such possession is that it be in opposition to the possession of the true owner and not be subordinate thereto. Hunsley v. Valter, 12 Ill2d 608, 147 NE2d 356. Defendant argues that if the adverse claimant believed at the time of the inception of his possession that he was the record owner his possession could not be hostile. The only authority for such argument called to our attention by defendant is dicta in LeMont National Bank v. Boza, 65 Ill App2d 1, 213 NE2d 72. We do not believe that such dicta is or was the prevailing rule in Illinois since it is not supported by the case cited (Wiedrich v. Howard, 7 Ill2d 589, 131 NE2d 508) and is contrary to other cases namely, Krause v. Nolte, 217 Ill 298, 75 NE 362, Grim v. Murphy, 110 Ill 271, Cassidy v. Lenahan, 294 Ill 503, 128 NE 544 and Weber v. Anderson, 73 Ill 439. Where a purchaser takes possession of property which the seller intends to convey possession of the purchaser is neither subordinate nor permissive. Indeed

there could hardly be a more unequivocal claim of ownership by such possession in opposition to the claim of a record owner.

■ ■ If, as we believe, the possession of plaintiffs was hostile in its inception then it follows that cases where the original possession was not hostile are not applicable and notice that the legal owner's title will no longer be recognized is not required.

According to the testimony of plaintiffs and the several neighbors who testified in their behalf, the plaintiffs used and maintained the fish pond, rock garden and sidewalk which were on parcel B. They also maintained and repaired the "farm type" wooden fence and hedges around parcels A and B as described above. The plaintiffs also replaced the wooden fence by a chain link fence also known as a cyclone fence. The witnesses were in some disagreement as to when the fence was replaced, their opinions ranging from twelve to twenty-two years. Additionally plaintiffs planted flowers, bushes, mowed the grass on parcel B and kept the sidewalks adjacent thereto free from snow when required. They also built a barbecue pit on parcel B as well as a flag pole.

Defendants argue that the acts and conduct of plaintiffs amounted to at most the acts and conduct of permissive trespassers and were of insufficient significance to conclude that the plaintiffs were exercising the dominion and control of parcel B as owners. We do not believe this conclusion is warranted from the evidence or by the cases cited by defendants.

■ ■ The thread which runs through most of the cases discussing title by adverse possession is that the extent or degree of dominion or control required is largely determined by the nature of the property. The use and control of property is the usual mode evidencing ownership. Leonard v. Leonard, 368 Ill 572, 17 NE2d 553. Such improvements or acts of dominion over the land as

will indicate to persons residing in the immediate neighborhood who has the exclusive management control of the land are sufficient to constitute possession. Augustus v. Lydig, 353 Ill 215, 187 NE 278. Important as the specific uses of parcel B as heretofore outlined are, they become even more important when parcel A and parcel B are considered together. So far as the evidence is concerned parcel B was used and the witnesses so considered it as an integral part of the homestead conveyed to plaintiffs. The fences as they existed in 1935, and as maintained and rebuilt by the plaintiffs, significantly contributed to the conclusion that parcels A and B were both owned and possessed by the same owner. See Augustus v. Lydig, supra.

██ ██ Defendants direct our attention to the absence of evidence that plaintiffs paid the real estate taxes on parcel B. Wijas, one of the plaintiffs, in response to a question relating to real estate taxes, indicated that he did not know whether or not he had paid real estate taxes on parcel B. Ill Rev Stats 1967, c 83, § 1, does not require the payment of real estate taxes to establish title by adverse possession, such circumstances being covered specifically by other sections of the statute. Nonpayment of real estate taxes is a factor to be considered in determining the character of the possession of land but it is not conclusive and under the circumstances of this case the nonpayment of real estate taxes is not particularly inconsistent with plaintiffs' claim of ownership.

██ Lastly we find no merit in defendants' claim that plaintiffs were not in exclusive possession of parcel B. In 1929 the Toths executed a written lease to the Spartan Petroleum Company, the lease running for ten years. The leased premises included a ten foot strip north of the garage building, such strip being included in the property described and designated parcel B. The lease was recorded and it is defendants' assertion that on ac-

count of such lease the plaintiffs' possession could not therefore have been exclusive.

We find no merit to this argument. It confuses the right of possession with actual possession which is the issue involved in the case at bar. The Toths as record owners of the remainder of parcel B, also had the right of possession thereof so far as the legal rights thereto are concerned. Whether the garage building lessee had the right of possession of the strip is immaterial so long as it was not in actual possession thereof. The evidence in this regard is undisputed and uncontradicted. The side of the garage building next to the strip which in fact formed a closure of the third side of parcel B, had no doorway or other means of entrance to or onto the ten foot strip. The only access thereto from the garage would have required a circuitous route around the fences enclosing parcel B. The only evidence presented to the trial court was that the ten foot strip was occupied and possessed in the same manner as the remainder of parcel B.

Finding no error in the decree of the Circuit Court of Cook County the decree of said Court is affirmed.

Decree affirmed.

RYAN, P. J. and ALLOY, J., concur.