CORNELIA GUINZY, Plaintiff-Appellant, *v.* VIRGINIA KRATZ *et al.*, Defendants-Appellees.

(No. 74-145; )

Fifth District—May 7, 1975.

Strubinger & Keller, of Belleville (August J. Keller, of counsel), for appellant.

Paul M. Storment, Jr., Ltd., of Belleville (Thomas C. Soraghan, of counsel), for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff-Appellant, Cornelia Guinzy, filed a complaint seeking a partition of property allegedly owned with the defendants-appellees as tenants in common and asking for rent for the defendants-appellees' occupancy of the property. The defendants were Virginia Kratz, individually and as administrator of the state of Oswald Kratz, deceased, and Oswald P. Kratz, Jr., a minor. Defendants answered and counterclaimed to quiet title. The trial court entered a decree for the defendants on the plaintiff's complaint and for the defendants on their counterclaim.

The evidence shows that John Kratz died intestate in 1937, leaving as his sole heirs Oswald Kratz, Sr., a son, and the plaintiff Cornelia Guinzy, a daughter. He owned four lots in Marissa, Illinois, on which was a home in which Oswald Kratz, Sr., lived continuously with his family from the death of his father in 1937 until his own death in 1970. Since the death of Oswald Kratz, Sr. his widow, defendant Virginia Kratz, and his son, defendant Oswald P. Kratz, Jr., have lived on the property. Oswald Kratz, Sr., paid all taxes, maintained the property and made substantial improvements to the residence which approximately doubled its size, and constructed a workshop and a garage.

The plaintiff visited in her brother's home from time to time through the years, knew about the improvements and maintenance, and that her brother paid all the taxes. In 1942 Oswald informed plaintiff that the property was in danger of being sold for back taxes and asked her to contribute to their payment. She refused but indicated an intention to reimburse him later, but this was never done. During the lifetime of her brother the plaintiff never made any demand for rent or otherwise asserted any claim or interest in the property. In July 1971, approximately 9 months after Oswald's death, plaintiff filed her complaint asking for partition and payment of back rent.

In their answer to the complaint defendants asserted that any rights which the plaintiff might have had were barred by laches. In two subsequent amendments to defendants' answer additional defenses were included—one, that any rent due before 5 years prior to filing the complaint was barred by the statute of limitations, and another, that defendants had acquired title to the real estate through adverse possession.

Attached to defendants' answer was a handwritten document which read:

> "I, the undersigned, have agreed to Oswald Kratz that I will never hold or file any claim against the John Kratz property."

This was signed "Mrs. Cornelia Kromer (nee Kratz)." The instrument was not dated, but it was notarized on April 19, 1946, by E. O. Albert, a notary public. Defendants maintained that this document constituted a waiver of any rights plaintiff might claim in the real estate. The document was admitted into evidence over objection by the plaintiff who claimed that she had not executed or signed it. The notary public involved testified that plaintiff had signed the document in his presence.

Attorneys for both parties submitted briefs. After hearing the evidence and considering the briefs, the trial court entered a decree in favor of the defendants on the plaintiff's complaint and quieting title in defendants upon their counterclaim. The trial court did not indicate upon which of the defendants' theories it based its decree.

We affirm.

In our opinion the instrument allegedly executed by the plaintiff is not adequate as a conveyance of property. There is no recitation of consideration, no one is named specifically as grantee, there are no words of conveyance, no description of property, and there is no date of execution, only that on which it was notarized. But while not admissible as a conveyance, it is admissible along with other evidence to show the intention of the parties. Therefore, it is not necessary to consider cases cited by the plaintiff in support of the view that the document is not admissible

as a conveyance. Neither do we feel that the facts in this case meet the requirements of section 6 of the limitations statute (Ill. Rev. Stat., ch. 83, par. 6), which states that one who holds property under color of title and pays taxes for a period of 7 years "* * * shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title." The instrument in question is insufficient to give color of title. In *Bergesen v. Clauss*, 15 Ill.2d 337, 342, 155 N.E.2d 20, the court said: "* * * any instrument having a grantor, a grantee, a description of the land and words of conveyance is sufficient to give color of title of the land to the grantee." As stated, the instrument in question does not meet these requirements.

We do find, however, sufficient elements of adverse possession present here to serve as a bar to plaintiff's claim.

■■ While it is agreed that the possession of one cotenant is the possession of all cotenants (*Harlan v. Douthit*, 379 Ill. 15, 39 N.E.2d 345) and that ordinarily a tenant in common out of possession may at any time assert his right and request partition (*Massman v. Duffy*, 333 Ill.App. 30, 76 N.E.2d 547; *Andrews v. Floyd*, 308 Ill. 559, 139 N.E. 883), this does not preclude a tenant in common from acquiring right against other tenants in common by adverse possession. In *Steele v. Steele*, 220 Ill. 318, 77 N.E. 232, the court said:

> "It is the general rule that statutes of limitation do not run as between tenants in common, for the reason that the possession of one tenant is, in contemplation of law, the possession of all; but if, as a matter of fact, the possession of one is adverse to the other, a right of action may be barred or title may be acquired under a statute of limitations. If one tenant in common holds exclusive possession, claiming the land as his, and his conduct and possession are of such a character as to give notice to his cotenant that his possession is adverse, the Statute of Limitations will run. (*Lavalle v. Strobel*, 89 Ill. 370; *Littlejohn v. Barnes*, 138 id. 478; *Kotz v. Belz*, 178 id. 434.)" (220 Ill. 318, 323.)

In *Simpson v. Manson*, 345 Ill. 543, 178 N.E. 250, it was said:

> "Before the possession of one tenant in common can be adverse to the co-tenant there must be a disseizin or ouster by some outward act of ownership of an unequivocal character, overt and notorious, and of such nature as to impart information and notice to the co-tenant that an adverse possession and disseizin are intended to be asserted by the tenant in possession. * * * It is a rule of evidence, merely, which enters into the question whether the possession is in fact adverse, and not a rule of law which

forbids the application of the Statute of Limitations to persons who occupy to each other the relation of tenants in common." 345 Ill. 543, 551-52.

While we recognize that for possession to be hostile in its inception, no spirit of animosity or hostility is required nor need the adverse claimant be guilty of deliberate or wilful tortious conduct (*Wijas v. Clorfene*, 126 Ill.App.2d 315, 262 N.E.2d 83.), it has been held that using and controlling the property as an owner is the ordinary way of asserting title thereto. *Schiller v. Kucaba*, 55 Ill.App.2d 9, 203 N.E.2d 710; *Shaw v. Smithes*, 167 Ill. 269, 47 N.E. 523.

■■ Applying these rules to the facts of this case we find the evidence is sufficient to show an ouster or disseizin by the plaintiff's brother Oswald to support a finding of adverse possession under the 20-year statutes (Ill. Rev. Stat., ch. 83, pars. 1, 2, 3 and 5). Over a period of 33 years Oswald was in exclusive and open possession. He paid all the real estate taxes on the property, made extensive improvements to the property and paid no rents to the plaintiff or otherwise accounted to her, all with full knowledge of the plaintiff. When her brother notified plaintiff of the imminent sale of the property for delinquent taxes, plaintiff refused help. These elements when coupled with the written disclaimer of interest by plaintiff are sufficient to show that Oswald treated and regarded the property as his own. The instrument plaintiff executed, despite its deficiencies, is evidence of an intention not to make any further claim on the property thereby implicitly recognizing her brother's claim to the whole.

On its facts this case is very similar to that of *Schiller v. Kucaba*. In that case Anton, Jr., and his wife executed a deed to two lots in 1922 to Anton, Sr. From October 1922 until 1939 Anton, Jr., and his wife used and maintained the lots as a chicken yard, vegetable and flower gardens and rock and lawn gardens and paid all the taxes. Beginning in 1931 and through January 1955 there were five conveyances of the lots involving Anton, Jr., and his four children, which conveyances were of record. From 1939 and until his death in 1948 Anton, Jr., and his children used and maintained the lots in essentially the same manner as before and that use and maintenance was continued after the death of their father. Following the death of Anton, Sr., in 1939 some of the plaintiffs came upon the premises to visit with their brother Anton, Jr., and his wife. They never consulted with him concerning improvements of the lots, never demanded rent, never instituted legal action for possession, and never inquired about or paid the taxes on the property, although many of these brothers and sisters of Anton, Jr., lived in the immediate vicinity of the lots in question. The court held that it was immaterial whether the adverse possession period is determined from the date of

the 1922 deed or the date of the 1931 deed since over 20 years had elapsed since either date until plaintiff had filed the action for partition and defendants (the children of Anton, Jr.) and their ancestors have continued in such open and notorious possession under claim of title since either date as to establish title in themselves through adverse possession.

Plaintiff places reliance on *Wolkau v. Wolkau*, 299 Ill. 176, 132 N.E. 507. That case is readily distinguished on its facts from the case under consideration. There, husband and wife were tenants in common of a parcel of land improved with a building. The husband collected the rents from the property and made repairs and improvements and paid a mortgage indebtedness and the taxes. The wife brought an action for an accounting and the husband defended on the grounds of laches. The court held the answer unavailing, stating that the possession of one of two tenants in common is the possession of both, that the husband had done no affirmative act which would lead the wife to believe she was not a one-half owner of the property, and, in fact, in his answer the husband acknowledged his wife to be entitled to an account for income received during the 5-year period prior to the filing of suit.

For the foregoing reasons the decree of the trial court will be affirmed.

Affirmed.

G. MORAN and KARNS, JJ., concur.