BEVERLY TRUST COMPANY, as Successor to Matteson-Richton Bank as Trustee, *et al.*, Plaintiffs-Appellees, v. STEFAN DEKOWSKI *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—90—3113

Opinion filed June 28, 1991.

Stinespring, Lambert & Associates, of Flossmoor (Connie J. Lambert and Jerry L. Lambert, of counsel), for appellants.

Kreisman & Rakich, of Matteson (Edward L. Morrison, Jr., Steven D. Rakich, and Robert D. Kreisman, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

In an action in ejectment, trespass and unjust enrichment to require defendants to remove pool equipment and a fence from a strip of land approximately 14 feet by 100 feet on plaintiff's property, defendants raised the defense of ownership by adverse possession. The trial court entered an order in favor of plaintiff and against the defendants on the issue of adverse possession. Defendants appealed.

On appeal, defendants contend: (1) the trial court erred when it concluded as a matter of law that the "open and notorious" element of adverse possession requires actual knowledge by the record titleholder of the adverse possessor's actions, assertions and claims; and (2) that even if "open and notorious" adverse possession requires actual knowledge by the record title holder, the trial court's finding of fact that the record titleholder could not be charged with knowledge of a fence on the property in question because of trees and shrubs at or near the fence line was clearly, plainly and palpa-

bly against the weight of the evidence; and (3) trial court errors substantially prejudiced defendants and affected the decision of the trial court.

Plaintiff purchased a 32-acre parcel of farmland in Olympia Fields, Illinois, in 1987 with the intention of subdividing the property for single-family home sites. After the purchase, plaintiff discovered that approximately 1,300 feet of the land was fenced in by defendants and defendants were using the land as their own.

On July 17, 1989, plaintiff filed a three-count action against defendants, alleging trespass, unjust enrichment and ejectment. Plaintiff sought damages and asked the court to order defendants to remove the fence, any improvements on the land and to vacate the premises. On January 4, 1990, defendants filed an amended affirmative defense which alleged defendants had acquired the land by adverse possession. Defendants contended they constructed a fence on the property in 1961 to enclose pool equipment they installed to service a pool on their property. Since that time their possession had been (a) continuous and without interruption; (b) hostile and/or adverse to the record title holder; (c) actual; (d) open, notorious and exclusive; and (e) their claim of title had been inconsistent with that of plaintiff and previous titleholders, all in excess of 20 years.

On April 4, 1990, defendants moved for summary judgment but the record shows no disposition of that motion. On April 11, 1990, the trial court first heard testimony from several witnesses on defendants' affirmative defense claim of adverse possession.

Plaintiff William Reichert testified as an adverse witness. He stated that he is a developer who purchased the property and took title in a land trust now held by Beverly Trust Company as trust No. 74—1669. Reichert admitted he walked the property before purchasing it but did not see the fence because the property was overgrown with bushes and trees. Reichert's surveyor, George C. Rainey, testified that his company prepared a survey of the land to be subdivided in 1986 but did not place the fence on the survey until 1987, just before his company signed off on the survey.

Stefan Dekowski testified that he was the owner of property adjacent to the farmland and in 1961 he put in a swimming pool and had the fence installed to house the pool equipment. He stated that he told the fence contractor to "put the fence *** inside my property about six to seven feet from the side of the farm." Dekowski testified that when the fence was installed there were no trees on the farm and you could see the farmhouse on the far corner of the

land when looking out across both properties. Dekowski testified that at one time golfers parked their cars on the farmland for a golf outing at Olympia Fields Country Club. Irene Dekowski testified that the farmland was an open field at the time they had the pool installed in 1961.

Harry Broman, who had lived next door to defendants since 1963, testified that the fence was there when he moved in and that the Dekowskis often used the fenced-in land. Neighbor Allen Rose testified that at some time in the past you could see the farmhouse over the open field behind the fence, but "over the years" the land became covered with trees and shrubs. On cross-examination, Rose testified that the house and barn on the farm north of the Dekowski property was surrounded by trees. He stated: "It never was farm that I recall in my years. I think it was just grown up." The defense rested with regard to its affirmative defense.

Reichert took the witness stand again, this time as a witness for plaintiff. Reichert testified that in 1960 or 1961 he helped park cars on the farmland while working at a golf outing at Olympia Fields Country Club. When asked by the judge what a particular mark on an exhibit meant, Reichert testified that was the location where they used to park cars and the area that now has the least amount of growth on it. None of the exhibits admitted at trial were made part of the record on appeal.

At the close of the evidence, the trial judge stated that he would take the case under advisement, commenting that the true issue in the case was whether defendants' possession was open and notorious. The court stated that the neighbors' testimony was irrelevant and that the question was whether the farm owner prior to plaintiff saw the fence and reasonably believed it was on his property.

By written order of April 18, 1990, the court found the evidence was insufficient to prove defendants' possession was open and notorious because there was no strict, clear or unequivocal evidence of the farmer's knowledge of the fence on his land. The trial court entered its finding in favor of plaintiff and against defendants and set a date for hearing to determine damages on the trespass and unjust enrichment claims.

Defendants moved for reconsideration and for certification of the question of whether proof of the open and notorious possession element of adverse possession requires proof that the record title landowner "had knowledge that the fence was on his property." On May 24, the trial court denied defendants' motion for reconsidera-

tion and the motion for certification of the question for purposes of interlocutory appeal.

The record does not disclose that the hearing as to damages for unjust enrichment and trespass set for July 9 took place. However, on October 10, 1990, the trial court dismissed count I, alleging trespass in plaintiff's complaint, and permitted plaintiff to withdraw count II, which alleged unjust enrichment. The trial court granted plaintiff's count III claim of ejectment, ordered defendants to vacate the land, and permitted them until January 10, 1991, to remove all property and improvements from plaintiff's land. The trial court denied defendants' motion for a rehearing but granted defendants' motion to stay enforcement pending appeal. Defendants filed a timely appeal.

First, defendants contend the trial court erred when it concluded as matter of law that the "open and notorious" element of adverse possession requires actual knowledge by the record titleholder of the adverse possessor's actions, assertions and claims.

■■ In order to establish title under the 20-year adverse possession doctrine, defendants' occupation of the land must be: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, and (5) under claim of title inconsistent with that of the true owner. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.) Presumptions are in favor of the titleholder, and the burden of proof on the adverse possessor requires that each element be proved by clear and convincing evidence. *Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174.

The trial court found, and the parties agreed, defendants met four of the five requirements to take title to the property by adverse possession: continuous, hostile or adverse, actual and under claim of title inconsistent with that of the true owner. The only requirement at issue before the trial court was whether defendants occupied the property in an "open, notorious" albeit exclusive manner.

Defendants' initial contention is that the trial court relied on an inappropriate definition of open and notorious and therefore based its ruling on inappropriate standards. In its April 18 opinion, the trial court stated: "Can the court say, in the absence of any other evidence, that the adjoining owner of a 32-acre parcel—with a farmhouse some 820 feet away from the encroaching fence, with no man-made boundaries around the 32-acre parcel, with trees around the farmhouse and at, or near, the encroaching fence line and also shrub vegetation in between the farmhouse and the encroaching

fence—could be charged with knowledge that the fence was on the farm property therefore satisfying the open and notorious requirement? The court finds the answer to be 'no.' There was no strict, clear or unequivocal evidence of the farm owner's knowledge—only speculation."

On May 24, 1990, the trial court explained its reasoning on the open and notorious question, stating: "The court is not saying that the personal awareness of the owner of the property must be shown or negated to prove adverse possession or the element of open and notorious; but the court is under the impression that where there are no circumstances indicating that the owner of the land could reasonably be aware of setting encroachment, regardless of absence of personal knowledge of it, that the defendant, adverse possessor's use of the present premises absent the above factor does not constitute open and notorious."

Defendants contend on appeal that the trial court improperly reasoned that in order to establish open and notorious possession, defendants had to prove the owner of the farm had knowledge of defendants' use of the property. In the decision of April 18, the trial court stated that there was "no strict, clear or unequivocal evidence of the farm owner's knowledge—only speculation."

Adverse possession is a question of fact to be decided by the trier of fact (*Duncan v. Abell* (1930), 340 Ill. 613, 616), and appellant bears the burden of establishing the trial court erred. *McIntyre v. McIntyre* (1919), 287 Ill. 544, 550; *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 86, 496 N.E.2d 1024.

A historical perspective on the doctrine of adverse possession reveals that as long ago as 1853 the Illinois Supreme Court in *Turney v. Chamberlain*, (1853), 15 Ill. 271, 273, noted that "[t]he law on this subject is well settled." The court named the five elements of the test for adverse possession as enunciated later in *Joiner* and concluded that such possession "need not, however, be under a rightful claim; nor even under a muniment of title. It is enough that a party takes possession of premises claiming them to be his own ***." *Turney*, 15 Ill. at 273.

This view prevailed, and in 1894 the supreme court, in *St. Louis, Alton & Terre Haute R.R. Co. v. Nugent* (1894), 152 Ill. 119, 124, stated: "[A]s a general rule it is sufficient if the land is appropriated in such manner as to apprise the community, or neighborhood of its locality, that the land is in the possession and enjoyment of the person claiming it."

The *Turney* case was cited more than 100 years later in *Wijas v. Clorfene* (1970), 126 Ill. App. 2d 315, 319, in which the court stated: "It must be an actual visible and exclusive possession acquired and retained under claim of title inconsistent with that of the true owner." The court found that "improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management control of the land are sufficient to constitute possession." *Wijas*, 126 Ill. App. 2d at 321-22.

In *Illinois Ry. Museum, Inc. v. Siegel* (1971), 132 Ill. App. 2d 77, 84, 266 N.E.2d 724, the railroad company sought to eject defendants from farmland they were using because the company contended it was the rightful titleholder. When considering the proof necessary to determine defendants' possession, the court stated: "[D]efendants' use need only be such as to apprise the community in the vicinity of their exclusive use and enjoyment of the land. Oral claim of ownership is not essential; conduct is sufficient[, citation] and controlling the property as an owner is the ordinary mode of asserting a claim of title." *Illinois Ry. Museum*, 132 Ill. App. 2d at 84.

The court in *Hauer v. Van Straaten Chemical Co.* (1953), 415 Ill. 268, 273, 112 N.E.2d 623, considering the same issue, stated: "Using and controlling property as an owner is the ordinary mode of asserting a claim of title, and it is the only way a claim of title could be proved in many cases. *** Such acts of dominion over the land as will indicate, to persons residing in the immediate neighborhood, who has the exclusive management and control of the land are sufficient to constitute possession. A fence is notice of actual occupancy."

Plaintiff contends that in order to establish open and notorious possession, the title holder must have actual knowledge of the adverse possession or constructive knowledge of the possession.

Plaintiff cites *Dempsey v. Burns* (1917), 281 Ill. 644, 648, 118 N.E.2d 193, where the court stated that "[n]otice of the possession *** must be of that open and visible character which from its nature is calculated to apprise the world that the land is occupied and who the occupant is." We believe a further reading of this case is in order. After the holding cited by plaintiff, the court found appellant had used two smooth wires around a number of trees to enclose a piece of vacant and unoccupied land submerged within a large area of trees. The court found no apparent use of the enclosure that could have put anyone on notice that possession had been

taken of the parcel. (*Dempsey*, 281 Ill. at 649.) Here defendants enclosed the property with a fence and installed permanent pool equipment, a small utility shed and a few bushes.

Plaintiff cites *McClellan v. Kellogg* (1856), 17 Ill. 498, 504, which held that "possession must be with such circumstances as are capable in their nature of notifying to mankind that he is upon the land." But we note that the *McClellan* court deemed defendant's actual possession of the land three years earlier the first "fact or change *** that could *** itself, possibly afford the slightest notice to the neighborhood, of any assertion of an adverse claim of title." 17 Ill. at 504.

The trial court here concluded it could not find defendants had acquired the land by adverse possession unless it determined that the true landowner knew of defendants' possession or had constructive knowledge of defendants' continued use of the land. Even the court's explanation a week later indicated this misconception as the basis for its ruling when the court stated: "[T]he court is under the impression that where there are no circumstances indicating that the owner of the land could reasonably be aware of setting encroachment ***."

■ Black's Law Dictionary defines "open and notorious" as "[a]cts on the land of another sufficient to alert the owner of a claim to his land which may ripen into title under adverse possession." (Black's Law Dictionary 983 (5th ed. 1979).) The *Joiner* court held that "[w]hile it is not necessary that the land should be enclosed by a fence, the boundaries must be susceptible of specific and definite location. *Joiner*, 85 Ill. 2d at 83, 421 N.E.2d at 175.

■ We find the correct test for open and notorious is whether the community in the vicinity of the land at issue is or could be apprised of defendants' possession and exclusive use and enjoyment. Defendants provided such notice when they fenced in the property and used the land without interruption for a period in excess of 20 years. We conclude that the trial judge relied on an improper definition of "open and notorious."

Defendants argue that even if "open and notorious" adverse possession requires actual knowledge by the record title holder, the trial court's finding of fact that the record titleholder could not be charged with knowledge of a fence on the property in question because of trees and shrubs at or near the fence line was clearly, plainly and palpably against the weight of the evidence.

Defendants contend the trial court had evidence that the farmland was clear of trees and bushes at the time the fence was in-

stalled and therefore the trial court's ruling was in error. Defendants point to the testimony of the Stefan and Irene Dekowski and their neighbors, which defendants contend proved the fence was visible to the owner of the farmland.

Defendants argue that the trial court was in error to consider plaintiff's testimony on the condition of the land in 1986 and 1987. Finally, defendants argue that the trial court was in error to give evidentiary weight to the size of the property involved, 32 acres, compared to the parcel in controversy, 1,300 square feet. Defendants argue that it is the appellate court's duty to reverse a trial court when it find the trial court's verdict is clearly against the manifest weight of the evidence. *Chapman v. Huttenlocher* (1970), 125 Ill. App. 2d 39, 47, 259 N.E.2d 836.

Plaintiff argues that the trial court properly found defendants had not met the burden of proof required to establish an open and notorious possession. Plaintiff argues that defendants proved neither actual knowledge on the part of the titleholder nor constructive knowledge on the part of the title holder and that such elements of adverse possession cannot be established by implication or inference. *Cagle v. Valter* (1960), 20 Ill. 2d 589, 592, 170 N.E.2d 593.

■ We find the record establishes from the testimony of Stefan and Irene Dekowski that the farmland was an open field at the time the pool equipment and fence were installed on the property in question. Neighbor Allen Rose testified that at some time in the past you could see the farmhouse over the open field but that, "over the years," the land had become overgrown with trees and bushes. Neighbor Harry Broman testified that the fence was there when he moved there in 1963 and that defendants often used the land. A neighbor down the block, Inez White, testified that she had lived in the area for more than 30 years and during that time had been in the Dekowski's backyard and knew they used the fenced-in portion of the yard as their own.

The evidence established that defendants' use of the land in question has been open and notorious since 1961. The land was fenced in and defendants permanently installed pool equipment on the property, regularly maintained the lawn and used the land as their own. Defendants' testimony established that at the time the fence was installed, the farmland was an open field. No evidence was produced to establish that the title holder did not have knowledge of the encroachment from 1961 to 1987 when the present owner-plaintiff acquired title. Though we hold that the title holder's

knowledge or constructive knowledge is not required to establish the open and notorious use of the property, it is improbable that in 26 years the resident landowner would not have walked his property. We conclude that the evidence established defendants' open, obvious and exclusive use of the land for the requisite 20 years to support a finding that defendants acquired title to the land by adverse possession.

Finally, defendants contend that trial court errors substantially prejudiced defendants and affected the outcome of the trial. Defendants contend the trial court committed reversible error when it refused to hear arguments on defendants' motion for summary judgment. Defendants contend summary judgment is proper where no questions of fact remain. Defendants argue that the trial court's reliance on the improper definition of open and notorious prompted its erroneous determination that a question of fact remained, *i.e.*, whether the title holder had actual or constructive knowledge of the encroachment.

Plaintiff contends the trial court committed no error in its interpretation of open and notorious. Plaintiff also argues that defendants failed to object to the court's refusal to hear their motion for summary judgment and that therefore this argument is waived on appeal. (*Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E. 2d 95.) The *Redmond* case governs here.

It appears from the record that defendants failed to notice up the motion before the trial court judge prior to the evidentiary hearing April 11. Further, defendants failed to request a hearing on the motion at the April 11 hearing. Therefore, defendants waived their right to object to the trial court's failure to hear arguments on their motion for summary judgment. In addition, we find the question of whether defendants' adverse possession was open and notorious was properly a question of fact for the trial court to consider at trial.

Therefore, the trial court committed no error in failing to consider the motion for summary judgment.

We hold that the trial court used an erroneous definition of open and notorious and therefore reverse.

Reversed.

RAKOWSKI, P.J., and McNAMARA, J., concur.